UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MITCHELL J. FREEMAN,<br><br>                    Petitioner,<br><br>v.<br><br>STEVE LITTLE, Warden,<br><br>                    Respondent. | Case No. 1:12-cv-0081-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Petitioner Mitchell J. Freeman filed a Petition for Writ of Habeas Corpus challenging his state court conviction. (Dkt. 1.) Respondent Steve Little has filed a Motion to Dismiss the Petition, arguing that the claims are untimely and procedurally defaulted. (Dkt. 12.) Several other motions are pending. (Dkt. 11, 14.)

Both parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 9.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Having reviewed the record in this matter and having considered the arguments of the parties, the Court has determined that oral argument is unnecessary. Accordingly, the Court enters the following Order dismissing the Petition for Writ of Habeas Corpus on statute of limitations grounds. Because the Court concludes that the Petition is untimely,

**MEMORANDUM DECISION AND ORDER - 1**

it does not reach Respondent's alternative argument that the claims are also subject to dismissal because they are procedurally defaulted.

## PRELIMINARY MOTIONS

Petitioner has requested appointment of counsel in this case. (Dkt. 14.) There is no constitutional right to counsel in a habeas corpus action. *Coleman v. Thompson,* 501 U.S. 722, 755 (1991). A habeas petitioner has a right to counsel, as provided by rule, if counsel is necessary for effective discovery or an evidentiary hearing is required in his case. *See* Rules 6(a) & 8(c) of the Rules Governing Section 2254 Cases. In addition, the Court may exercise its discretion to appoint counsel for an indigent petitioner in any case where required by the interests of justice. 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B). Whether counsel should be appointed turns on a petitioner's ability to articulate his claims in light of the complexity of the legal issues and his likelihood of success on the merits. *See Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

After reviewing the procedural issues currently at hand, the Court concludes that Petitioner has sufficiently briefed the issues, and appointment of counsel would not aid Petitioner in making additional arguments that would be helpful to the Court in its decisionmaking. For these reasons, Petitioner's request for appointment of counsel will be denied.

Respondent has requested leave to file a memorandum that exceeds the page limits permitted by Local Rule 7.1(b)(1), because of the complex procedural history of Petitioner's case. (Dkt. 11.) Good cause appearing, the motion will be granted.

**MEMORANDUM DECISION AND ORDER - 2**

## REVIEW OF MOTION TO DISMISS PETITION

**1.     Background**

In 2000, Petitioner was charged in state court with two counts of grand theft for stealing guns and one count of being a persistent violator, filed in the Fifth Judicial District Court in Twin Falls County, Idaho. Petitioner failed to appear in that case. In 2005, he was charged in a new criminal case with grand theft for stealing a horse. (State's Lodging F-5, p. 1.)

After Petitioner's arrest in 2005, all of the pending criminal charges were addressed at the same time. Pursuant to a plea agreement, Petitioner entered a guilty plea in the grand theft case involving theft of the guns (CR 00-411), and he entered an *Alford* plea in the case involving theft of a horse (CR 05-6331).[1] (State's Lodging A-1.) On October 18, 2005, two judgments of conviction were entered, sentencing Petitioner to concurrent prison terms of five years fixed with five years indeterminate, with the trial court to retain jurisdiction. (*Id.*, pp. 79-80, 163-74.) On February 22, 2006, at the end of the retained jurisdiction period, Petitioner was placed on probation for three years. (*Id.*, pp. 82-84, 169-71.) On March 2, 2006, an amended order of probation was filed in the case involving grand theft of a horse. (*Id.*, pp. 175-77.) Petitioner did not file a notice of appeal from the conviction or sentences.

---

[1] An *Alford* plea takes its name from *North Carolina v. Alford*, 400 U.S. 25, 35 (1970), where the United States Supreme Court held that it was constitutionally permissible for the court to accept and sentence an individual upon "a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty."

**MEMORANDUM DECISION AND ORDER - 3**

On July 14, 2006, Petitioner was charged with probation violations in both cases. (State's Lodging A-1, pp. 85-89, 182-86.) Petitioner's probation was revoked, and orders of commitment were issued on January 30, 2007, requiring him to serve the underlying prison terms that had been entered in the October 2005 judgments. (State's Lodging A-1, pp. 108-09, 196-97.) Petitioner filed a Rule 35 motion for reduction of sentence, which was denied on February 12, 2007. (*Id.*, pp. 110-13, 198-201.)

On February 20, 2007, Petitioner filed notices of appeal in both cases, and the cases were consolidated. Petitioner raised only the issues of whether his probation was revoked wrongfully and whether the state district court abused its discretion in denying his Rule 35 reduction of sentence motion. (State's Lodging B-3.) That appeal was unsuccessful, and the remittitur was issued on September 16, 2008. (State's Lodgings B-1 to B-10.)

During the pendency of the appeal, on November 5, 2007, Petitioner filed a pro se petition for post-conviction relief challenging only his conviction in the horse case. (State's Lodging C-1.) That petition was ultimately denied as untimely on September 26, 2008, after a notice of intent to dismiss was issued by the state district court. (*Id.*, pp. 82-88 & 129-31.) Petitioner filed a notice of appeal, but the appeal was dismissed for Petitioner's failure to file his opening brief. The remittitur was issued on November 9, 2009. (State's Lodgings D-1 to D-8.)

On February 13, 2009, Petitioner filed a successive post-conviction action, in which he challenged only his conviction for grand theft of the horse. Petitioner was

**MEMORANDUM DECISION AND ORDER - 4**

appointed counsel, who filed an amended successive petition challenging only the probation revocation. Petitioner was not granted relief. (State's Lodgings G-1 to G-3.) The appeal of that matter was likewise unsuccessful, with the remittitur issued on January 4, 2012. (State's Lodgings H-1 to H-12.)

On December 7, 2009, during the pendency of his successive post-conviction petition, Petitioner filed a motion for correction or reduction of his sentences. (State's Lodging E-1, pp. 31-39.) That motion was denied, and Petitioner filed an appeal, which was ultimately unsuccessful. (State's Lodgings F-1 to F-8.) The remittitur in that case was issued on November 9, 2010. (State's Lodging F-8.)

The Petition for Writ of Habeas Corpus in this action was filed on February 9, 2012 (mailbox rule date). It challenges only Petitioner's conviction for grand theft involving the horse.

**2.      Statute of Limitations Issue**

      **A.      *Standard of Law***

The Petition for Writ of Habeas Corpus in this case is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act (AEDPA), enacted in 1996. Under AEDPA, petitioners have a one-year statute of limitations period within which to file a federal habeas corpus petition. The one-year period usually begins to run from the date the state court judgment "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

The United States Supreme Court recently clarified application of this rule:

**MEMORANDUM DECISION AND ORDER - 5**

> For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the "conclusion of direct review"—when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in this Court, or in state court, expires.

*Gonzalez v. Thaler*, 132 S.Ct. 641, 653-54 (2012).

The statute provides tolling (suspension) of the one-year period for all of "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). A motion to reduce a sentence that is not a part of the direct review process and that requires re-examination of the sentence qualifies as a collateral review application that tolls the one-year statute of limitations. *Wall v. Kholi*, 131 S.Ct. 1278 (2011). Thus, to the extent that a petitioner properly filed an application for post-conviction relief or other collateral review in state court, the one-year federal limitations period stops running on the filing date of the action and resumes when the action is completed.

**B.**    ***Discussion of Timeliness***

The Petition for Writ of Habeas Corpus in this action, filed February 9, 2012 (mailbox rule date), challenges Petitioner's conviction for grand theft involving the horse. Because Petitioner did not challenge his October 18, 2005 conviction or the March 2, 2006 amended order of probation in state court for the first time until post-conviction proceedings were filed in November 2008, Respondent argues that

**MEMORANDUM DECISION AND ORDER - 6**

Petitioner's federal habeas corpus statute of limitations expired on claims arising from the conviction. To determine the question of when Petitioner's conviction became final, the Court looks to Idaho law governing the question of finality of the conviction.

(1)    Idaho Law Governing Finality

In Idaho, a convicted criminal defendant has 42 days from the date a final order or judgment is entered in which to file an appeal. *See* I.A.R. 14(a). In *State v. Jakoski*, 79 P.2d 711 (Idaho 2003), the Idaho Supreme Court addressed the question of when a challenge to one's guilty plea must be brought to be deemed timely, under circumstances similar to those at issue in this case. There, after Mr. Jakoski's probation was revoked and his previously-suspended sentence was implemented, he filed a motion to withdraw his *Alford* plea. The Idaho Supreme Court held that the district court lacked jurisdiction to hear the motion to withdraw the guilty plea, because, [a]bsent a statute or rule extending its jurisdiction, the trial court's jurisdiction to amend or set aside a judgment expires once the judgment becomes final, either by expiration of the time for appeal or affirmance of the judgment on appeal." 79 P.2d at 714.

In *Gonzalez v. State*, 79 P.3d 743 (Idaho Ct. App. 2003), the Idaho Court of Appeals further explained that, under Idaho law,

> the time for filing a post-conviction application challenging a judgment of conviction or sentence does not start anew from the entry of a probation revocation order. Rather, any post-conviction action filed within the limitations period connected to the probation revocation order, but beyond the limitations period measured from the appeal period for the judgment of conviction, may address only issues that arose from the probation revocation proceeding.

**MEMORANDUM DECISION AND ORDER - 7**

*Id.* at 744.

    (2)    <u>Contents of Federal Habeas Corpus Petition</u>

All of Petitioner's challenges in this action are based on the 2005 judgment of convictions or, under the most liberal construction, the 2006 amended order of probation. No claim arises from the probation revocation. Petitioner identifies nothing showing that he could not have challenged his conviction directly after the 2005 judgments or 2006 amended order of probation.

    (3)    <u>Analysis</u>

Idaho law requires a criminal defendant to bring non-jurisdictional challenges to his judgment arising from a guilty plea within 42 days, regardless of whether the sentence is suspended. *See Jakoski*, *supra*. Accordingly, the Petitioner's one-year federal statute of limitations began running when his judgment became final – the earliest of which was on October 18, 2005 + 42 days (November 29, 2005), and the latest of which was on March 2, 2006 + 42 days (April 13, 2006). The federal statute of limitations continued running until it expired one year later – at the latest, on April 13, 2007 – because no state court action challenging his conviction was filed within that time period.

Another federal district court facing a similar question determined:

> Under 28 U.S.C. § 2244(d)(1)(A), the one-year statute of limitations for challenging any *substantive issues relating to a trial court judgment* which imposes probation begins to run *when the judgment imposing probation becomes final. See Caldwell v. Dretke*, 429 F.3d 521, 530 (5th Cir.2005). By contrast, any claims arising from the revocation of probation

**MEMORANDUM DECISION AND ORDER - 8**

> would begin to run when the judgment that revoked the petitioner's
> probation became final. *See Davis v. Purkett*, 296 F.Supp.2d 1027,
> 1029-30 (E.D. Mo.2003).

*Hathcock v. McDonough*, 2008 WL 2814868, at *5 (S.D. Fla. 2008) (emphasis added).

Other courts have reached similar holdings. *Cf. Williams v. Smith*, 2012 WL 3985609 (E.D. Va. 2012) (Where a petitioner challenges both his original conviction and a probation revocation related to that conviction in the same 28 U.S.C. § 2254 petition, it is appropriate for the Court to separate the claims relating to the original conviction from the claims relating to the probation revocation.); *Short v. Eagleton*, 2006 WL 2583614 (D.S.C. 2006) (considering petitioner's claims relating to original conviction separately from claims relating to probation revocation). Thus, the pieces of litigation concerning only Petitioner's probation revocation that began on July 14, 2006 and ended on September 16, 2008, could not toll the federal statute of limitations for claims arising from the 2005 convictions or 2006 amended order of probation.

Even if the Court considers the Rule 35 motion for reduction of sentence as a properly-filed post-conviction action that tolled the federal statute of limitations under *Wall v. Kholi*, 131 S.Ct. 1278, 1285-86 (2011),[2] the resulting calculation still shows an an untimely filing of his petition. A time period of 292 days ran from April 13, 2006 (the date the judgment became final), to January 30, 2007, when the Rule 35 motion was filed. The Rule 35 motion was finalized by issuance of the remittitur after appeal on

---

[2] On appeal, Petitioner raised only state law abuse of discretion claims, not constitutional claims, regarding denial of the Rule 35 motion. (State's Lodging B-3.)

**MEMORANDUM DECISION AND ORDER - 9**

September 16, 2008, when tolling ended. The statute began running again on September

16, 2008, and expired 73 days later, on November 27, 2008. (State's Lodgings A-1, pp.

198-201; B-1 to B-10.)

     While Petitioner did file a post-conviction action on November 1, 2007 (mailbox

rule) challenging the horse theft judgment of 2005, the state district court dismissed it as

untimely. (State's Lodgings C-1, pp. 8-12, 82-88; 129-130.) Petitioner's appeal of that

matter was dismissed on October 15, 2009, because he failed to file an opening brief, and

the remittitur in that action was issued on November 9, 2009. (State's Lodgings D-1 to

D-8.)

     Because Petitioner's post-conviction action was deemed untimely by the state

courts, it cannot toll the federal statute of limitations. Untimely state court actions are not

considered "properly filed" post-conviction actions for federal tolling purposes. *See*

*Bonner v. Carey*, 425 F.3d 1145, 1149 (9th Cir. 2005.) Therefore, Petitioner's remaining

73 days expired during the pendency of the first post-conviction action, making his 2012

filing of the federal Petition untimely.

     Finally, Petitioner's second motion for correction or reduction of his sentences,

filed on December 7, 2009, was filed beyond the federal statute of limitations expiration

date, and could not serve to re-start or extend the federal limitations period. *See*

*Ferguson v. Palmateer*, 321 F.3d 820, 822 (9th Cir. 2003) ("section 2244(d) does not

permit the reinitiation of the limitations period that has ended before the state petition

was filed").

**MEMORANDUM DECISION AND ORDER - 10**

Petitioner argues that he had no reason to challenge his judgment when he was free on probation, but after his probation was revoked and the order sending him to prison was issued on January 30, 2007, Petitioner diligently used the appeal process and the post-conviction process to contest his convictions and sentences. The large state court record in this case attests to his efforts. However, while that argument makes practical sense, it does not meet the standard of law governing finality: according to the law, finality for the type of claims Petitioner brings is marked from the *original* judgment of conviction. The interim actions challenging the parole revocation did not toll the statute.

Petitioner also argues that he obtained newly-discovered evidence on February 10, 2007, which would start his statute of limitations anew. Title 28 U.S.C. § 2244(d)(1)(D) provides: "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from . . . the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

Particularly, Petitioner asserts that on February 10, 2007, his attorney, Ben Anderson, handed him a brown envelope containing numerous court papers and new evidence. (This date was after probation had been revoked, and before Petitioner filed his initial post-conviction action.) Even if the envelope contained facts previously unknown to Petitioner, he failed to file his Petition for Writ of Habeas Corpus by February 10,

**MEMORANDUM DECISION AND ORDER - 11**

2008, the one year period after discovering that evidence.[3] Rather the Petition in this

action was not filed until February 22, 2012, more than four years later.

### C.   *Equitable Tolling*

#### (1)   Standard of Law

The limitations period may be equitably tolled under exceptional circumstances,

permitting the federal district court to hear otherwise untimely habeas corpus claims. In

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the Court clarified that,"[g]enerally, a

litigant seeking equitable tolling bears the burden of establishing two elements: (1) that

he has been pursuing his rights diligently, and (2) that some extraordinary circumstances

stood in his way." *Id*. at 418. To qualify for equitable tolling a circumstance must have

caused a petitioner to be unable to file his federal petition in time. "Diligence" has been

defined as "reasonable diligence," not "maximum feasible diligence." *Holland v.

Florida*, 130 S.Ct. 2549, 2565 (2010) (internal citations omitted).

#### (2)   Discussion

Petitioner argues that he has been pursuing his rights diligently throughout the

entire time since his probation was revoked and he was sent to prison, and that statement

is certainly supported by the record. However, the finer point at issue here is whether he

diligently pursued his rights as to the claims *arising from the original conviction*. As to

---

[3] In other places in the record, Petitioner asserts that he was in possession of evidence showing that he was actually innocent before he pleaded guilty; he states that he gave his counsel "both contracts and witness affidavits . . . to prove his innocence" before he pleaded guilty. (State's Lodging C-1, p. 39.) If these items are the factual predicate for the assertion of his claims, they were discovered in 2006 or earlier, which would make the expiration of a "discovery" statute of limitations date even earlier.

MEMORANDUM DECISION AND ORDER - 12

that point, the record shows that, even though Petitioner entered an *Alford* plea, which leaves the door open for an appeal after a "guilty" plea, he did nothing to pursue a direct appeal of his conviction, and he did not pursue a timely post-conviction action as to claims *arising from the original conviction*. Petitioner only began doing so when his probation was revoked, which, according to Idaho law, was too late. Neither does the record reflect any extraordinary circumstances that prevented Petitioner from pursuing his claims in state and federal court sooner than he did. While Petitioner may contend the law may seem unfair in this regard, this Court can act only in the manner that the law permits.[4]

Because Petitioner has not pointed to any facts that would support an equitable tolling argument and no such facts are apparent from the record, Petitioner's request for

---

[4] In *Bonner v. Carey*, the Ninth Circuit Court explained:

> We recognize the harshness of the result of our decision. Because of the California Superior Court's long delay in ruling on his petition, Bonner lost more than 270 of the 365 days that he had to file his federal petition. *Pace*, however, expressly held that such a result–"a petitioner trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that he was never 'properly filed'"–did not justify a different rule.

The Supreme Court further remarked that:

> A prisoner ... might avoid this predicament ... by filing a "protective" petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted. A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute "good cause" for him to file in federal court.

425 F.3d at 1149 & 1149 n.20 (quoting *Pace v. DiGuglielmo*, 544 U.S. at 416.)

**MEMORANDUM DECISION AND ORDER - 13**

application of equitable tolling to excuse the untimeliness of his filing will be denied. Accordingly, the Petition is subject to dismissal with prejudice unless Petitioner can show actual innocence.

**D.**     *Discussion of Actual Innocence*

The United States Court of Appeals for the Ninth Circuit has determined that "Congress intended for the actual innocence exception to apply to AEDPA's statute of limitations." *Lee v. Lampert*, 653 F.3d 929, 934 (9th Cir. 2011) (en banc). If a petitioner brings forward evidence that "demonstrates that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt," actual innocence serves as a "gateway" to permit the federal court to hear Petitioner's constitutional claims on the merits. *Id*. at 937.

The *Lee* Court explained:

> This exacting standard "permits review only in the 'extraordinary' case," but it "does not require absolute certainty about the petitioner's guilt or innocence."[5] As we have previously said, "where post-conviction evidence casts doubt on the conviction by undercutting the reliability of the proof of guilt, but not by affirmatively proving innocence, that can be enough to pass through the *Schlup* gateway to allow consideration of otherwise barred claims."[6]

*Id*. at 938.

---

    [5] *Lee* is quoting *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

    [6] *Lee* is quoting *Sistrunk v. Armenakis*, 292 F.3d 669, 673 (9th Cir. 2002) (*en banc*) (citing *Carriger v. Stewart*, 132 F.3d 463, 478–79 (9th Cir. 1997) (*en banc*)).

**MEMORANDUM DECISION AND ORDER - 14**

To show a miscarriage of justice, Petitioner must support his allegations of constitutional error with new reliable evidence that was not presented at trial, *Schlup v. Delo*, 513 U.S. 298 (1995). For example, types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996). Actual innocence must be premised on "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. at 615.

Here, Petitioner alleges that his "newly discovered evidence" shows that he is actually innocent of the conviction of grand theft of the horse. Petitioner submitted the following evidence of his actual innocence with his Petition for Writ of Habeas Corpus: (1) a letter from his wife, Krissy Freeman, dated July 13, 2005, regarding facts she believes show Petitioner did not steal the horse; (2) a "Hauling Release and Waiver," signed by the owner of the horse, Dee Misenhimer, on May 25, 2005; (3) a letter from Clark Jorgenson, an eyewitness to the communications/transaction regarding the horse, dated July 8, 2005; (4) a report of the "brand inspector"; and (5) a copy of the telephone bill of the Petitioner during the relevant time in question. (Dkt. 1, p. 23; Dkt. 1-1.) Petitioner stated in his Petition: "All of these documents were in the control of the prosecutor, [and] were not released to the Petitioner, nor to the court, until very recently." (Dkt. 1, p. 21.) As noted above, it appears that Petitioner had some of these documents in his possession before he pleaded guilty, and that other documents were

**MEMORANDUM DECISION AND ORDER - 15**

given to him on February 10, 2007. It is beyond question that Petitioner would have had personal knowledge of his own contracts and his own phone bills at the time he was being prosecuted.

Petitioner entered an *Alford* plea, rather than a guilty plea, as to the horse theft charge. He alleged that the entire situation was a misunderstanding and that he did not follow good business practices in keeping the owners informed about the horse, but he had no intent to steal the horse. (State's Lodging A-2, p. 14, 31.)

Petitioner argues that he is actually innocent because he had the owners' permission to have the horse in his possession, but he simply could not contact the owners at the telephone numbers given him by them, and thus had no choice but to take the horse with him when he moved from the Twin Falls County area to Eagle, Idaho, several hours away. At sentencing, the prosecutor persuasively argued that, even if Petitioner did not have the owners' current telephone number, Petitioner knew their address, and yet he never went to their house to tell them of his impending move and the status of the horse before his permanent relocation to Eagle. Petitioner himself stated: "I am extremely sorry for not getting ahold of Dee when we did move. There is nothing I can say to take that back." (Dkt. 1-1, p. 21.) At the sentencing hearing, Petitioner's attorney also summarized that Petitioner "said in this report that he moved to Eagle due to the cost of living and never informed Mr. Misenhimer." (*Id*., p. 32.)

The record also reflects that Petitioner did nothing more to contact the owners after he began residing in Eagle. Rather, it was only *after* Petitioner's mother-in-law, a

**MEMORANDUM DECISION AND ORDER - 16**

deputy in Owyhee County, told him that there was a police report of a stolen buckskin horse out of Twin Falls County, that Petitioner contacted the brand inspector, the Buhl Police Department, and the Twin Falls Sheriff's Department. Petitioner was arrested the next day. (*Id.* at 32-33.)

Also at sentencing, Petitioner's attorney admitted that Petitioner took the guns that formed the factual basis of the other conviction. (*Id.*, p. 21.) In addition, Petitioner's long history of theft undercuts his argument that he did not intend to commit theft this time. The sentencing court noted: "Now I don't know if you see a pattern in all of that, sir, but I sure do. What it tells me is that from 1988, which was essentially 13 years ago, up through and including June of 1995, you stole something significant just about every opportunity you got." (*Id.*, p. 36. ) *See House v. Bell*, 547 U.S. 518, 538-39 (2006) (a federal habeas court's assessment of new evidence may include consideration of "the credibility of the witnesses presented at trial," including making "some credibility assessments").

In short, Petitioner's documents show that the transaction started out as a contractual arrangement, but that is undisputed; rather, the issue was whether Petitioner acted beyond the bounds of the contract and removed the horse from the area without notifying the owners. In addition, Petitioner's witnesses cannot personally speak to whether Petitioner had the intent to steal the horse when he took it to Eagle; much of their written statements focus on the period when Petitioner first obtained the horse (not at issue), or the time period *after* he realized a stolen horse report was issued (not really

**MEMORANDUM DECISION AND ORDER - 17**

at issue). The witnesses's testimony of circumstantial facts must be weighed against other circumstantial facts suggesting that Petitioner did not intend to contact the owners after he moved, and that he contacted authorities about the horse only *after* he realized a theft report about the horse had been lodged. In total, Petitioner has not made a sufficient demonstration of innocence to meet the actual innocence standard–that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. Accordingly, the Court concludes that the actual innocence exception cannot be applied to permit the Court to hear Petitioner's untimely claims.

### 3.   Alternative Basis for Dismissal of Claim 1

Petitioner's first claim is "I was factually innocent of the theft of a horse, and am being held for a crime I did not commit, away from family." He asserts he is being held in violation of the Eighth Amendment's Cruel and Unusual Punishment Clause. The United States Supreme Court has determined that a claim of actual innocence is not cognizable on collateral review in a federal habeas corpus action. *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993) ("[O]ur habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."). Therefore, this claim is subject to dismissal for failure to state a claim upon which relief can be granted.

**MEMORANDUM DECISION AND ORDER - 18**

## REVIEW OF THE CLAIMS AND THE COURT'S DECISION
## FOR PURPOSES OF CERTIFICATE OF APPEALABILITY

Upon dismissal or denial of a habeas corpus petition, the Court is required to evaluate the claims within the petition for suitability for issuance of a certificate of appealability (COA). 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); Rule 11(a), Rules Governing Section 2254 Cases. A petitioner's appeal cannot proceed without obtaining a COA and filing a timely notice of appeal.

A COA will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, under this standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.*" Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and punctuation omitted).

When a court has dismissed a petition or claim on procedural grounds, in addition to showing that the petition "states a valid claim of the denial of a constitutional right," as explained above, the petitioner must also show that reasonable jurists would find debatable whether the court was correct in its procedural ruling. *Slack,* 529 U.S. at 484. The COA standard "requires an overview of the claims in the habeas petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal. *Miller-El*, 537 U.S. at 336.

Here, the Court has dismissed Petitioner's claims on procedural grounds. The Court finds that additional briefing on the COA is not necessary. Having reviewed the record thoroughly, the Court concludes that reasonable jurists would not find debatable the Court's decision on the procedural issues and that the issues presented are not adequate to deserve encouragement to proceed further. The Court has carefully searched the record and reviewed the law independently of what Respondent has provided to satisfy itself that justice has been done in this matter where Petitioner is representing himself pro se and has limited access to legal resources. In addition, the alternative dismissal of Petitioner's actual innocence claim as failing to state a claim is not debatable under the current status of the law. As a result of all of the foregoing, the Court declines to grant a COA on any issue or claim in this action.

If he wishes to proceed to the United States Court of Appeals for the Ninth Circuit, Petitioner must file a notice of appeal in this Court **within thirty (30) days after entry of this Order**, and he may file a motion for COA in the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b)(2).

## ORDER

**IT IS ORDERED:**

1.    Respondent's Motion to Dismiss (Dkt. 12) is GRANTED. Petitioner's case is DISMISSED with prejudice.

2.    Respondent's Motion for Leave to File Excess Pages (Dkt. 11) is GRANTED.

**MEMORANDUM DECISION AND ORDER - 20**

3.      Petitioner's Motion for Appointment of Counsel (Dkt. 14) is DENIED.

4.      The Court will not grant a Certificate of Appealability in this case. If

Petitioner chooses to file a notice of appeal, the Clerk of Court is ordered

to forward a copy of this Order, the record in this case, and Petitioner's

notice of appeal, to the United States Court of Appeals for the Ninth

Circuit.

DATED:  **August 19, 2013**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 21**